RENDERED:  FEBRUARY 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1115-MR

CERVANTES & ASSOCIATES　　　　　　　　　　　　　　　　　APPELLANT

v.　　　　　　APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 19-CI-00679

BERKLEY INSURANCE COMPANY　　　　　　　　　　　　　　　　APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Cervantes and Associates ("Cervantes") appeals from the Fayette Circuit Court's order granting summary judgment to Berkley Insurance Company ("Berkley") on its claims for breach of contract, negligence, and negligent misrepresentation and awarding $450,000 in damages.  For the reasons below, we reverse and remand.

# BACKGROUND

Cervantes is a Kentucky Limited Liability Company that owns and leases real estate, run by Juan and Araceli Cervantes. In late December 2017, Cervantes purchased a two-story warehouse in Lexington, Kentucky, intending to rent the second floor to a local grocery, Latino Market, for storage. The purchase was contingent upon Cervantes getting a structural engineering report "that the floor will hold the weight for the purchasers [sic] intended use." For whatever reason, the report was never obtained.

Subsequently, Latino Market and Cervantes entered into a lease agreement for Latino Market to lease the second floor of the building. Section 2 of the lease agreement between Latino Market and Cervantes provided:

> 2. <u>USE</u>
>
> Landlord agrees that Tenant . . . may use the Demised Premises for any lawful purpose. It is the intention of Tenant to use the Demised Premises for the purpose of grocery storage warehouse used by Tenant in conducting such business operations . . . . For such purposes Tenant requires at all times appropriate means of access to the Demised Premises from public highways for motor vehicles and personnel of Tenant and of others. *Landlord expressly warrants that the Demised Premises may be used for all of the specific purposes expressed hereinbefore*, and that the requisite access to the demised Premises shall at all times be available.

(Emphasis added.)

Seven months later, the second floor collapsed, destroying Latino Market's inventory. Its insurer, Berkley, paid out $450,000 under an insurance policy. Berkley, as subrogee, then filed a complaint in Fayette Circuit Court alleging breach of contract, negligence, and negligent misrepresentation based upon what it believed to be an express warranty in the "use" provision. Berkley argued the language "Landlord expressly warrants that the Demised Premises may be used for [a grocery storage warehouse]" in the "use" provision constituted an express warranty that the building was fit to be used for grocery storage.

According to Berkley, Cervantes breached the lease by warranting that the second-floor warehouse was suitable for grocery storage without confirming it could support Latino Market's grocery products. Similarly, Cervantes was negligent in failing to verify the building was structurally sound after expressly warranting it could be used for grocery storage. It was also liable for negligent misrepresentation because Latino Market relied upon the express warranty when entering the lease and the warranty was false.

Berkley subsequently moved for summary judgment on all claims. Following a hearing, the circuit court granted the motion and awarded Berkley $450,000 in damages, the amount Berkley paid to Latino Market under its insurance policy. At the hearing, the court gave its reasoning as follows:

> I do not think that the defendant can say I did not
> consider the weight-bearing concerns of that building. . .

at some point that crossed his mind. . . .  I mean, he had to have thought it, then he had to put it on paper, and so, to say now I am going to warranty this . . . .

. . .

Defendant, as the landlord, assumed a duty.  You're right, he had no duty until he assumed a duty.  And then once he assumes a duty, he has got to follow through.  And unfortunately, he did not. . . . So, are there any factual disputes?  Maybe a factual dispute as to the exact cause of why the building came down . . . but it does not matter why it came down. . . .  I am going to grant the motion for summary under the theory of the breach of contract, the negligence, and I guess negligent misrepresentation . . . .

Cervantes moved to alter, amend, or vacate the judgment, arguing its damages should be limited according to the lease.  The court denied the motion, finding the argument was not preserved.  This appeal followed.

## STANDARD OF REVIEW

The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor.  Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Phoenix American Adm'rs, LLC v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023) (internal quotation marks and citations omitted). Further, "[t]he construction and interpretation of the lease are questions of law and our standard of review is *de novo.*" *Community Tr. Bancorp, Inc. v. Mussetter*, 242 S.W.3d 690, 692 (Ky. App. 2007) (citation omitted).

## ANALYSIS

Cervantes argues the circuit court erred in granting summary judgment on Berkley's breach of contract, negligence, and negligent misrepresentation claims. We will address its specific arguments as to each claim in turn. As to breach of contract, Cervantes contends "[i]t was improper for the trial court to inject duties from the December 4, 2017, Commercial Purchase Agreement into the January 10, 2018, Lease Agreement as the basis for granting summary judgment to Appellee when a clear dispute exists as to the purpose [of the warranties in the purchase agreement]." Cervantes misapprehends the basis for the circuit court's award of summary judgment on the breach of contract claim. The breach of contract was based on an express warranty in the lease, not the purchase agreement. In its motion for summary judgment, Berkley specifically

cited language from the lease[1] and argued the language was an express warranty the warehouse was suitable for storing Latino Market's grocery products.

Despite this confusion, we agree that the court erred in granting summary judgment on the breach of contract claim. To prove breach of contract, a plaintiff must show the existence of a contract, breach of that contract, and that the breach caused damages. *EQT Production Company v. Big Sandy Company, L.P.*, 590 S.W.3d 275, 293 (Ky. App. 2019) (citation omitted). "Judicial review of a contract begins with examination of the plain language of the instrument." *Mostert v. Mostert Group, LLC*, 606 S.W.3d 87, 91 (Ky. 2020). "In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (internal quotation marks and citation omitted). A contract "must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).

The circuit court granted summary judgment on the breach of contract claim because it found Cervantes expressly warranted that the warehouse was

---

[1] Berkley cited the following language from the lease's "use" provision: Cervantes "expressly warrants that the Demised Premises may be used for all of the specific purposes expressed [herein.]"

suitable for storing Latino Market's grocery supplies then failed to get a structural engineering report to confirm this assertion. The circuit court improperly construed the "use" provision as an express warranty of the building's fitness. That provision reads in its entirety:

> 2. <u>USE</u>
>
> Landlord agrees that Tenant, and those holding by, through and under Tenant, may use the Demised Premises for any lawful purpose. It is the intention of Tenant to use the Demised Premises for the purpose of grocery storage warehouse used by Tenant in conducting such business operations; and for other purpose or purposes ancillary to the business of Tenant. For such purposes Tenant requires at all times appropriate means of access to the Demised Premises from public highways for motor vehicles and personnel of Tenant and of others. *Landlord expressly warrants that the Demised Premises may be used for all of the specific purposes expressed hereinbefore*, and that the requisite access to the demised Premises shall at all times be available.

(Emphasis added.)

In isolation, the sentence "Landlord expressly warrants that the Demised Premises may be used for [a grocery storage warehouse]" might appear as an express warranty that the warehouse is fit for grocery storage. After all, one of the definitions of "may" is "have the ability to."[2] *May*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/may (last

---

[2] However, according to merriam-webster.com, this definition is archaic.

visited Feb. 5, 2025).  However, when the paragraph is read as a whole, it is clear the express warranty is to the permissive use of the building for grocery storage, not its fitness for that use.  Another definition of "may" is "have permission to." *Id.*  In context, "Landlord expressly warrants that the Demised Premises *may* be used for [a grocery storage warehouse]" means Cervantes guarantees Latino Market has permission to use the leased premises for its intended purpose.

Several factors support this interpretation.  First, the section's title, "use," suggests the paragraph relates to how the property will or may be used under the lease.  A different section, titled "Condition of the Property" seems a more fitting place to address whether the property is suitable for grocery storage.

Second, the first sentence of the "use" provision indicates the paragraph is concerned with authorized uses:  "Landlord agrees that Tenant . . . may use the Demised Premises for any lawful purpose."  In this context, the warranty that the warehouse "may be used" for grocery storage implies permissive use.  After stating the property may be used for "any lawful purpose," the Lease expresses Latino Market's intent to use the warehouse for grocery storage.  The "use" provision addresses how the building will be used rather than its capacity for grocery storage.

Third, the express warranty at the end of the paragraph parallels Latino Market's intended use and required access provisions at the beginning.  The

lease mentions Latino Market's intent "to use the Demised premises for grocery storage warehouse" and its need for "appropriate means of access to the Demised Premises." Cervantes then "expressly warrants" that the Demised Premises may be used for a grocery storage warehouse "and that the requisite access to the Demised premises shall at all times be available." Thus, the warranty addresses how Latino Market will use and access the property, issues raised at the beginning of the "use" provision. It makes no statement whether the warehouse is fit or structurally sound for grocery storage.

In sum, we find no express warranty as to the warehouse's fitness for grocery storage in the "use" provision, and the circuit court erred in finding Cervantes breached the contract as a matter of law on that basis.[3]

Berkley's negligence claim also appears to be based on the express warranty.[4] As an initial matter, it is unclear whether Berkley has a viable

---

[3] We would note that at least two other lease provisions appear relevant to Berkley's breach of contract claim: section 26, "Condition of Demised Property," and section 8, "Repairs and Maintenance." However, these provisions were not argued below, and even if relevant, factual issues appear to preclude summary judgment under either at this time.

[4] In its motion for summary judgment, Berkley argued:

> Cervantes expressly warranted in the Lease with Latino Market that the Property could specifically be used for the storage of Latino Market's grocery products. In that regard, Cervantes obligated itself to verify that the Property could support the weight of the groceries yet willfully chose not to do so. Cervantes's choice to not obtain a structural engineering report when it purchased the Property breached its self-imposed duty to Latino Market . . . .

negligence claim independent of its breach of contract claim. *See Superior Steel,*

*Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 792 (Ky. 2017) ("[A]

plaintiff may assert not only a breach of contract but also a negligence claim

provided there is a separate legal duty to undergird the tort claim."). But assuming

it does, the circuit court erred in granting summary judgment on the claim.

"The basic elements of a negligence claim are: duty, breach,

causation, damages." *Phelps v. Bluegrass Hosp. Management, LLC*, 630 S.W.3d

623, 628 (Ky. 2021) (internal quotation marks and citation omitted). In the context

of landlord-tenant relationships, the general rule is "a landlord is not liable for

injuries to the tenant or his property because of defects in the leased premises in

the absence of a contract or warranty as to the condition of the premises or to

repair same . . . ." *Clary v. Hayes*, 300 Ky. 853, 858, 190 S.W.2d 657, 659 (1945)

(citation omitted). Presumably, the circuit court found a duty based on the express

warranty and that Cervantes breached that duty as a matter of law. Because we

hold there was no express warranty to the condition of the premises, summary

judgment on Berkley's negligence claim on that basis was error.[5]

---

[5] There is an exception to the general rule that a landlord cannot be liable for defects in leased premises absent a contract or warranty which could form the basis of negligence claim in this case. "[A] landlord can be responsible for dangerous conditions in areas not demised to a tenant and that remain in the landlord's exclusive control." *Warren v. Winkle*, 400 S.W.3d 755, 761 (Ky. App. 2013). This rule is outlined in *Restatement (Second) of Torts* § 361 (1965):

> A possessor of land who leases a part thereof and retains in his
> own control any other part which the lessee is entitled to use as

-10-

The circuit court also erred in granting summary judgment on Berkley's negligent misrepresentation claim. A negligent misrepresentation claim "requires proof by clear and convincing evidence of a material representation that a defendant knew, or should have known, to be false." *Aesthetics in Jewelry, Inc. v. Brown, ex rel. coexecutors*, 339 S.W.3d 489, 495 (Ky. App. 2011) (citing *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 581 (Ky. 2004)). Importantly, "negligent misrepresentation requires an affirmative false statement." *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 746 (Ky. 2011) (citation omitted). Berkley's negligent misrepresentation claim was based on the alleged express warranty. No other affirmative false statement has been attributed to Cervantes. Since we have found no express warranty in the lease, summary judgment on this claim was improper.

---

appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

Comment b states the rule in this section "applies to the maintenance of walls, roofs, and foundations of an apartment house or office building." It is unclear if this rule would apply to the facts of this case. Regardless, this argument was not made below. Even if the rule applied, whether Cervantes by the exercise of reasonable care could have discovered the condition and made it safe would likely be an issue of fact for the jury.

-11-

Finally, Cervantes argues the circuit court failed to limit its damages pursuant to the lease. Cervantes first raised the issue of damages in its motion to alter, amend, or vacate. The circuit court held Cervantes failed to preserve the issue before judgment. The preservation issue is now moot as we are reversing the summary judgment and remanding for additional proceedings.

**CONCLUSION**

Based upon the foregoing, the order of the Fayette Circuit Court is reversed, and this matter is remanded for additional proceedings.

ALL CONCUR.

BRIEF FOR APPELLANT:

J. Peter Cassidy, III
Ethan F. Johnson
Lexington, Kentucky

BRIEF FOR APPELLEE:

Matthew A. Taulbee
Fort Mitchell, Kentucky